11 June 1999

NO. 4-98-0340

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Sangamon County

GREGORY A. McMANN, ) No. 96CF1028

Defendant-Appellant. ) 

) Honorable

) Donald M. Cadagin,

) Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In November 1996, the State charged defendant, Gregory A. McMann, with stalk­ing Diane S. Striplin for fol­lowing and harass­ing her and, thereby, placing her in reasonable appre­hen­

sion of fu­ture bodily harm.  720 ILCS 5/12-7.3(a)(2) (West 1996).  In Janu­ary 1997, defendant entered a negotiated plea of guilty to stalking Striplin and received two years' pro­ba­tion.  As part of his probation, defendant was to have no contact with Striplin or her family.  In De­cem­ber 1997, the State peti­tioned to re­voke defendant's proba­tion on a number of viola­tions, including fail­

ure to pay fees and intoxication.  The State then twice amend­ed its peti­tion to allege de­fen­dant bat­tered Striplin in Janu­ary 1998 in violation of his pro­ba­tion order.  In Feb­ru­ary 1998, the trial court found by a preponderance of the evidence that de­fen­dant had bat­tered Striplin and, therefore, re­voked defendant's pro­ba­tion.  In April 1998, the trial court resen­tenced de­fen­dant to three years' impris­onment and, the same month, denied defen

dant's motion to recon­sider.  

De­fen­dant ap­peals, argu­ing that the trial court, by sentencing him to the maximum prison term permitted for stalking under the state statute, pun­ished him for the con­duct upon which his pro­ba­tion was re­voked, rather than for the origi­nal offense.  Defendant also argues the court was erro­ne­ously predis­posed to im­pose a pris­on term upon defendant.  We affirm.

BACKGROUND

The conduct that formed the basis of the stalking charge to which defendant entered a guilty plea in­clud­ed defen

dant's (1) keeping Striplin under surveillance for two to three days and (2) once beat­ing on Striplin's door, threat­ening to blow up her apart­ment build­ing when she refused to let him in, and then break­ing bot­tles on Striplin's patio floor when these threats failed to gain him entrance.  As it sentenced de­fendant to proba­tion, the trial court ad­mon­ished him to take the terms of his probation seri­ously and stated as follows:

"Sir, I just want to emphasize to you the seriousness of probation.  I asked you if you understood the terms of probation[,] and you said yes[,] and the reason is, because I want to make sure that you clearly understand these because if you violate any of these terms of probation the State's Attorney's Office can file a petition to revoke your probation.  We'd then have a hearing on it[,] and if I find that you have violated your probation, I guarantee you, sir, you're going to be going to jail."

The court continued:

"I consider this to be a very serious matter[,] and I want to ex­plain this to you because I don't want to send you to jail.  I don't want to see you back in here again facing these charges, so I want to emphasize to you how serious I consider probation to be because I want you to clearly understand if you violate the terms you're going to jail and I don't want to do that."

Defendant replied that he understood these admonishments.

At the hearing to revoke defendant's probation, Striplin testified she let defendant in her apartment the evening of January 7, 1998, after he came to her door saying he wanted to talk.  Defendant smelled strongly of alcohol and proceeded to take off his clothes for Striplin to wash, donning a towel to cover himself.  Striplin re­peat­edly told de­fen­dant to leave.   When he refused, Striplin went across the hall to her neighbor's apart­ment to call her land­lord.  Striplin then re­turned to her apart­ment, where de­fen­dant knocked her over a chair, kicked her in the side, and struck her in her face and chest repeatedly with his fist and open hand, leaving Striplin with a bloodied face and fractured foot.  Striplin's land­lord then ar­rived, and de­fen­dant threw on his soak­ing wet clothes and raced out the door.

Striplin tes­ti­fied on cross-exam­ina­tion that de­fen­dant, whom she briefly dated in high school, had ha­rassed her, her ex-

hus­band, her chil­dren, and her guests and friends for almost two de­cades by, among other things, driv­ing by her home re­peatedly, knock­ing on her door, break­ing her win­dows, and batter­ing her in front of her chil­dren.  Striplin said she blamed defendant for her losing her children to the State and was ex­treme­ly afraid of him.

Mary Atterberry, who lived across the hallway from Striplin, testified that on the night Striplin was attacked Atterberry was able to look through Striplin's partially opened apart­ment door and saw de­fen­dant accost Striplin after Striplin re­turned from using Atterberry's por­ta­ble tele­phone to call the land­lord.  Atterberry heard Striplin screaming, saw Striplin fly through the air and over a re­clin­er, and then saw de­fen­dant jump on top of Striplin.  De­fen­dant fled as soon as the land­lord ar­

rived, leaving Striplin with blood on her face, a swell­ing foot, and unable to walk.

John Vaughn, Striplin's landlord, said Striplin called him that evening and requested his immediate presence at her apartment.  He raced up the stairs to Striplin's apart­ment after receiving a 9-1-1 message from his tenant on his pager and heard scream­ing and hol­ler­ing as he approached Striplin's apartment.  He heard Striplin yell, "Stop it, you're kill­ing me, you're hurt­

ing me."  When Vaughn got to the door of the apart­ment, he saw defen­dant on top of Striplin hit­ting her repeatedly and saw Striplin bleeding from the face with blood on her hands.  De­fen­

dant fled the apart­ment after Vaughn ordered him to stop hitting Striplin.  Vaughn raced after him, chas­ing him down the back steps of the apartment building and across the street, fi­nal­ly catching defen­dant near the apartment complex and hold­ing him until po­lice ar­rived.

Defendant, against the advice of counsel, testified on his own be­half.  He claimed Striplin lost her children because of her own abuse and neglect of them but blamed him for her prob­lems and, therefore, had made up the present alle­ga­tions to get back at him.  He de­nied entering Striplin's apartment building or her apartment the night of the attack and said he just happened to be in the area look­ing for a place to stay for an up­com­ing court hearing.  De­fendant denied ever seeing Vaughn be­fore the hearing and was unable to clearly articulate why he was tack­led and ap­

pre­hend­ed near Striplin's apart­ment build­ing that night.

The presentencing report filed before defendant's sen­

tencing hearing showed defendant had a "rap sheet" with offenses dating back to 1985, including unlawful use of a weap­on, disor­

derly conduct, battery, assault, and criminal trespass to resi­

dence.  The presentencing report quoted from a report made by a men­tal health pro­fes­sion­al as­signed to counsel defendant fol­low­

ing defendant's conviction for stalking that paint­ed a dim por­

trait of defendant's reha­bili­ta­tive po­ten­tial.  The mental health professional reporting to the presentencing officer de­scribed de­

fen­dant as noncompliant and unin­ter­ested in treat­ment and said de­fen­dant had consis­tently denied responsibility for his crimes, claimed he had been framed, and had poor in­sight into his con­di­

tion.  The presentencing re­port con­clud­ed that reha­bil­i­ta­tion had not oc­curred in defendant's case and anoth­er term of proba­tion would not likely have any differ­ent effect on defendant's behav­

ior.

During the sentencing hearing, the trial judge read from the mental health portion of this re­port to support his con­

clu­sion de­fen­dant still posed a serious risk to Striplin and should be incar­cerated for the maximum amount of time pos­sible for stalking under state statute, as requested by the State.  The court stat­ed:

"I think she's at risk.  This has been going on for [10] years.  This defendant has been receiving counseling, denies that there is a problem, still continues to deny today that there's any problem.  It's all her fault and none of this is his fault.  I think this victim is very much at risk and because of this, I agree with [the State's] recommenda­

tion."

The court concluded:

"Based upon this situation, the fact that he was on probation when this happened, the defendant is sentenced to three years in the Department of Corrections ***."

This appeal followed.

ANALYSIS

Defendant argues this court should vacate defendant's sentence and remand the cause for resentencing because (1) the trial court sen­tenced him to three years in pris­on for beat­ing Striplin, rath­er than for stalk­ing her, in vio­la­tion of the gen­

eral rule that a sentencing court may not im­pose a sen­tence de­

signed to punish the defendant for the crimi­nal activ­ity that triggered the revo­cation of proba­tion; and (2) the trial court was erroneously predisposed to give de­fendant a pris­on term, rath­er than proba­tion.  De­fen­dant pre­served nei­ther argu­ment for re­view as he failed to raise either ob­jection at the sentencing hearing or in­clude them in a postsen­tenc­ing mo­tion. 730 ILCS 5/5-

8-1(c) (West 1996); 
People v. Reed
, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997).  Howev­er, defendant claims both matters are of such a magni­tude as to con­stitute plain error under Su­

preme Court Rule 615(a) (134 Ill. 2d R. 615(a)).  

Sentencing issues may be reviewed as plain error where the issue is one of misapplication of the law, as the right to be sentenced lawfully is substantial and affects a defendant's fun­

damental right to liberty.  
People v. Keene
, 296 Ill. App. 3d 183, 186, 693 N.E.2d 1273, 1275 (1998).  A sentencing decision by the trial court will generally not be disturbed on appeal unless the trial court abuses its discretion.  
People v. Thomas
, 178 Ill. 2d 215, 249, 687 N.E.2d 892, 907 (1997); 
People v. Porter
, 285 Ill. App. 3d 50, 53, 676 N.E.2d 1, 3 (1996).  A sentence im­

posed within statutory limits will not be overturned unless it is great­ly at variance with the purpose and spirit of the law or is mani­festly disproportionate to the nature of the offense.  
Por­

ter
, 285 Ill. App. 3d at 53, 676 N.E.2d at 3.  When sentencing a de­fendant after revocation of probation, the trial court may con­

sider the defendant's conduct while on probation, and criminal offenses committed by defendant while on probation may be consid­

ered in aggravation.  
Porter
, 285 Ill. App. 3d at 53, 676 N.E.2d at 3.  A sentence within the statutory range for the original of­

fense will not be set aside on review unless the reviewing court is strongly persuaded that the sentence imposed after revo­cation of probation was imposed as a penalty for the conduct that was the basis of revocation and not for the original offense.  
People v. Young
, 138 Ill. App. 3d 130, 142, 485 N.E.2d 443, 450 (1985).

Defendant quotes the trial court's statement that it sentenced him to three years in prison "based on the situation" or, rath­er, 
be­cause de­fen­dant was on pro­ba­tion when the battery oc­curred, to sup­port his con­ten­tion that the trial court had pun­

ish­ed him for batter­ing Striplin instead of for his orig­inal of­fense.  Defendant's claim is with­out mer­it.  This comment by the trial court, even out of con­text, does not indi­cate the court con­sid­ered it­self enti­tled to sen­tence or indeed did sentence de­

fen­dant to the maximum sentence permitted by statute as punish­

ment for the bat­tering Striplin alone.  The court's entire com­

men­tary shows it sen­tenced de­fen­dant to this prison term be­cause it be­lieved his attack on Striplin while on probation for stalk­

ing reflected adversely on his rehabilitative potential, 
i.e.
, de­fen­dant posed a seri­ous threat to Striplin based on his abysmal criminal record, the char­ac­ter­iza­tion of de­fen­dant's psy­chologi­

cal and rehabilita­tive progress as quite poor, defendant's un­end­

ing ha­rass­ment of Striplin for more than a de­cade, and the vio­

lent nature of defendant's lat­est at­tack on Striplin.  

Moreover, the trial court had every right to con­sid­er the violent nature of defendant's probation viola­tion in deter­

mining what sentence he would receive after his probation was revoked.  In fact, any re­spon­sible court would consider defen

dant's bru­tal and inju­ri­ous at­tack on Striplin not only a fla­

grant vio­la­tion of his proba­tion but gravely impor­tant in fash

ioning de­fen­dant's sentence for the original of­fense.  Defen

dant's sen­tence is within the statuto­ry lim­its and is not mani­

fest­ly dis­pro­por­tion­ate to the nature of his original crime, stalking.  This court is not at all per­suad­ed that the sen­tence im­posed after the revo­ca­tion of defendant's proba­tion was im­posed as a penal­ty for his latest attack on Striplin rather than for his orig­inal of­fense against her.

Defendant also argues the trial court was erroneously predisposed to sentence defendant to prison given that it twice ad­mon­ished defendant during defendant's original sentencing hear­

ing that it would send him to pris­on if he vio­lated his proba­

tion.  De­fen­dant cites two cases to sup­port this contention.  In 
People v. Bolyard
, 61 Ill. 2d 583, 585-87, 338 N.E.2d 168, 169-70 (1975), the court re­manded the defendant's cause for resentencing where the trial court would not even con­sider pro­ba­tion for a con­vic­tion of inde­cent liber­ties with a child.  The court said the trial judge had arbi­trari­ly denied probation be­cause defen­

dant fell within his cate­gory of disfavored offend­ers.  
Bolyard
, 61 Ill. 2d at 587, 338 N.E.2d at 170.  In 
People v. Kendrick
, 104 Ill. App. 3d 426, 435-36, 432 N.E.2d 1054, 1061 (1982), the first district remanded the defendants' causes for resentencing, find­

ing the trial judge was predisposed to sentence the defendants to prison on drug and conspiracy charges and had not considered the possibility of probation, as required by law.  Both cases are distinguish­able from the instant case.

In this case, defendant had al­ready been given pro­ba­

tion by the trial court during his ori­ginal sen­tencing hearing.  While sen­tenc­ing defen­dant to probation for stalking Striplin, the trial court attempted to im­press upon defendant the seri­ous­

ness of his crimes and insure that defendant understood the trial court would not hesitate to impose a prison term upon defendant to pro­tect his vic­tim should de­fen­dant con­tinue to harass Striplin in vio­la­tion of the probation order.  These re­marks by the trial court are not analogous to those of the sentencing courts in the cases cited by de­fen­dant, nor do they suggest that the court un­justly pre­de­ter­min­ed that certain classes of crimes or indi­vidu­als would not be con­sidered for probation.  Rath­er, the trial court was warn­ing de­fen­dant he could not expect lenient treatment again should he fla­grantly violate his proba­tion.  The trial court was acting within its authority to so inform defen­

dant, and defendant's claims other­wise are without merit.  

CONCLUSION

For the foregoing reasons, we find the trial court did not violate defendant's rights or commit sentencing errors when sentencing defendant to three years in prison, and we reject his request to remand the cause for a new sentencing hearing.  

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.